JOHN ROCHE et al., Plaintiffs-Appellants, v. THE COUNTY OF LAKE et al., Defendants-Appellees.

Second District   No. 2—83—0752

Opinion filed August 17, 1984.

Paul P. Diambri, of Law Office of Wallace B. Dunn, of Highwood, for appellants.

Fred L. Foreman, State's Attorney, of Waukegan, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, deputy sheriffs employed in the civil process and warrant division of the Lake County sheriff's office, appeal from a judgment of the trial court entered in favor of defendants, the county of Lake, the Lake County Board and its individual members, the Lake County Merit Commission (Merit Commission), the board of trustees

of the Illinois Municipal Retirement Fund, and the personnel director and sheriff of Lake County, which found that while plaintiffs were entitled to benefits under the Illinois Municipal Retirement Fund for Sheriffs, they were not entitled to be compensated under the sheriff's office merit pay schedule.

Plaintiffs raise two issues on appeal: (1) whether the trial court erred by applying inappropriate law, and (2) whether the trial court erred in failing to award attorney fees pursuant to 42 U.S.C. sec. 1988 (1976).

Plaintiffs, full-time deputy sheriffs in the civil process and warrant division and all hired prior to January 1, 1981, became certified personnel, governed by the rules and regulations of the Lake County Merit Commission, on January 1, 1981. Three compensation schedules exist for Lake County employees: the general services occupation pay schedule, the personnel administrative pay schedule, and the sheriff's office merit pay schedule. There are two pension plans, the Illinois Municipal Retirement Fund (hereinafter IMRF) and the Illinois Municipal Retirement Fund for Sheriffs (commonly known as the Sheriff's Law Enforcement Pension Plan, and hereinafter SLEP), the latter requiring higher contributions while providing greater benefits. Prior to January 1, 1981, plaintiffs, although full-time deputy sheriffs in the civil process and warrant division, were not certified under the Merit Commission and were compensated according to the general services occupation pay schedule and covered under IMRF. Following their certification in 1981, plaintiffs sought to be included under SLEP and to be compensated according to the higher sheriff's office merit pay schedule. The sheriff's office merit pay schedule lists only one job classification, which is that of a highway patrolman. After defendants failed to acknowledge plaintiffs' request, plaintiffs commenced this action. In an eight-count complaint, subsequently amended to add a ninth count, they alleged breach of the employment contract, violation of State statute and county rules and regulations, violation of the equal protection clauses of the Illinois and United States constitutions, and violation of 42 U.S.C. section 1983 (1976).

The trial court granted, in part, plaintiffs' motion for judgment on the pleadings, declaring that plaintiffs were entitled to the benefits and protections of SLEP from January 1, 1981, to the present. On plaintiffs' motion for summary judgment, the trial court later found that plaintiffs were entitled to SLEP coverage for their periods of employment prior to January 1, 1981, and granted that portion of the motion for summary judgment

The following relevant evidence was adduced at the bench trial

below. Frank Lennon, one of the plaintiffs who had worked in the warrant section and was then employed in the process section, testified that the duties of the officers in civil process are to serve summonses, subpoenas, and court orders, and to assist in executing eviction orders, property levies, and in replevin actions; that they have arrest powers and carry a firearm for which they have to qualify once a month on the firing range; that they might be asked to assist in a prostitution raid or gambling investigation or on an accident scene; that they are paid under the general services occupation scale but that in the process server division Deputy Jerry Smith is paid under the sheriff's office merit pay schedule, although he has the same duties as any other process server; that he was not aware of any disability that Jerry Smith had that would keep him from operating on the highway patrol; that when Lennon was first employed, he was covered by the Sheriff's Pension Plan, known as SLEP, but was taken out of SLEP after nine months of employment and put under the Illinois Municipal Retirement Plan, "IMRF"; and that after the lawsuit was filed, he was put under the SLEP fund.

On cross-examination, Lennon admitted that his duties during extraditions, assisting investigations, involving riot control, and so forth are not his primary responsibilities; that his job is not the same as someone in highway patrol or investigation; that his primary responsibility is serving process; and that he had heard Jerry Smith had heart trouble and a leg problem.

Plaintiff Darrell Robert Byerly, who has worked in the jail and civil process and warrant division, testified that he was paid under the general services occupation schedule but that in the warrant division where he presently worked, Harold Millison and William Pucin were paid under the sheriff's office merit pay schedule; that Millison was not suffering from any disability that would keep him from working on the road; and that Pucin had worked as a highway patrolman and requested a transfer into the warrant division but was not suffering from any disability. The warrant division locates and arrests subjects who have previously had warrants issued for their arrest and transports convicted misdemeanants and felons to the Department of Corrections. On occasion, they assist in investigations. On cross-examination, Byerly stated that his primary duty was serving warrants and that his job assignment was not the same as highway patrol or investigations.

William Pucin testified that when he was first employed by the Lake County sheriff's department, he was a noncertified deputy paid under the general service occupation schedule; that in 1977 he became

certified and went onto the road division and was paid under the sheriff's office merit pay schedule; that after one year he requested a transfer to the warrant division; that he was not suffering from any type of disability; and that while working in the warrant division until July 1980, when he left the sheriff's department, he continued to be paid under the sheriff's office merit pay schedule although his supervisor was paid under the general services occupation schedule.

Jerry Smith, appearing as an adverse witness, testified that he was certified as a deputy sheriff in 1966 and was classified as a highway patrolman; that all of his time as a deputy sheriff has been spent in radio communications and civil process and he has never worked in highway patrol; that he has been paid at all times under the sheriff's merit system; that when he was initially employed by the sheriff's department he had an injured leg and was on a disability pension from the Waukegan police department; that he suffered heart attacks in 1974 and 1977 and requested to go into the civil process division; and that he pays into the SLEP program and has never been removed.

Testifying as an adverse witness, Roger Sloot, director of personnel for the county of Lake, stated that after being notified that various deputies had been grandfathered in as merit employees in 1981 he corresponded with Mr. Edman at the IMRF as to whether these employees should be placed under SLEP; that after receiving an affirmative reply, the employees were not immediately placed under the SLEP on advice of counsel due to the filing of the lawsuit; that noncertified full-time deputies were denied SLEP benefits from 1975 to 1981 based on the criterion that they were not certified; that it was IMRF's responsibility to determine who is under SLEP; that the personnel department bases pay on market rate and the duties and responsibilities for that position; that the Merit Commission has no input in the establishment of the sheriff's office merit pay schedule salaries; and that pay grades are established by classifying positions of similar class and responsibilities and ranking them the same. Sloot further stated that between May 1976 and March 1979, the jailors were under the Merit Commission and were paid under the general services occupation pay schedule. Under the general services occupation pay schedule for sheriff's department employees was listed job classifications of clerical workers, jailors, communication workers, work release employees, maintenance people, civil process and warrant servers, court security personnel, and cooks.

Harold Millison, a former deputy, testified that he was hired in 1958 in the highway patrol department; that in 1965 he was assigned to the civil process division where he remained the entire time except

for one year when he was in charge of the warrant division; that he was "grandfathered" in as a merit deputy in 1966 when the Merit Commission started; that he was paid under the sheriff's office merit pay schedule the whole time he was there; that he was capable of working on the highway patrol division; and that he was under SLEP as that became effective and paid into it the entire time.

Appearing as an adverse witness, Marion Watson, chairman of the Merit Commission, testified that the Merit Commission does not establish salaries; that the different job classifications are given different examinations; that highway patrol does have some of other classifications but they do not have an additional examination; that to be under the Merit Commission means that an employee is certified by the Merit Commission, is to meet the requirements of the job that the Merit Commission has established, and has his own grievance procedure; that the Merit Commission is basically a control over hiring and firing; and that the Merit Commission has nothing to do with salaries.

Robert Morrison, director of finance for the county of Lake, testifying as an adverse witness, stated that there is a personnel inventory set up by job classification and that pay scales are applied accordingly; that certification has nothing to do with pay, it is a protection of the employees of the sheriff's office; that the Merit Commission has nothing to do with setting salary schedules; that, as IMRF agent, he received a memo in 1974 requesting a discussion on the problem of 71 deputy sheriffs on SLEP that were not certified by the Merit Commission; and that those employees who were not certified personnel as identified in the IMRF regulations as being eligible were removed from SLEP.

After reviewing the evidence and the parties' written final arguments, the trial court found, *inter alia,* that the uneven effects of legislative classification ordinarily do not create constitutional problems when the basic classification is rationally based; that for such a classification to be raised to the level of an equal protection violation it must be based on invidious discrimination; that since plaintiffs do not claim they are members of a suspect class, it must be determined whether a fundamental right is involved; that under Illinois law a public employee does not have a property interest in the continuance of any specific rate or method of compensation; that it is therefore necessary for the plaintiffs to prove that purposeful discrimination was involved; that the evidence does not support the conclusion that the county was acting with a discriminatory purpose; that plaintiffs' employment contracts were modified to the extent that they became certified deputies, but the record failed to reveal that defendants were

contractually obligated to pay plaintiffs the same as the previously certified deputies; that the actions of the county in failing to pay plaintiffs under the pay schedule used to compensate deputies certified before January 1, 1981, does not amount to a breach of contract; that plaintiffs claim defendants are violating either a State statute, county regulation, policy procedure, or practice, but plaintiffs have failed to seek redress through administrative channels; that plaintiffs must exhaust their administrative remedies before they seek access to the courts; that since plaintiffs did not prevail on their claims under 42 U.S.C. section 1983 (1976), they are not entitled to recover attorney fees pursuant to 42 U.S.C. section 1988 (1976); and that plaintiffs' success in obtaining judgment with respect to their being entitled to benefits under SLEP is on a pendant claim to their claim under section 1983, and since they failed on the constitutional issue after a plenary trial, an award of attorney fees would not be justified.

■ Plaintiffs' primary contention on appeal is that the trial court improperly relied on cases where a legislative classification was attacked on its face rather than cases involving the discriminatory application of laws fair on their face. A review of the trial court's findings reveals that while the trial court basically cited cases in which legislative classifications were challenged on their face on equal protection grounds (see, *e.g., Clements v. Fashing* (1982), 457 U.S. 957, 73 L. Ed. 2d 508, 102 S. Ct. 2836; *Schilb v. Kuebel* (1971), 404 U.S. 357, 30 L. Ed. 2d 502, 92 S. Ct. 479), it also made a finding that the evidence did not support the conclusion that the county was acting with a discriminatory purpose in its treatment of plaintiffs as compared with deputies certified prior to January 1, 1981. Even assuming the trial court erroneously relied on cases where a legislative classification was attacked facially, the parties agreed at oral argument that under the evidence here, where credibility of witness was not disputed below, this court could properly decide whether there was a discriminatory application of the law. The reviewing court is not bound to accept the reasons given by the trial court for its judgment, and the judgment may be sustained upon any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct. *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9.

■ Plaintiffs' equal protection claim is based upon the equal protection clause of the fourteenth amendment to the United States Constitution and a civil cause of action for deprivation of that right pursuant to the Civil Rights Act. (42 U.S.C. sec. 1983 (1976).) Plaintiffs contend that the appropriate law to be applied is that found in *Yick*

*Wo v. Hopkins* (1886), 118 U.S. 356, 30 L. Ed. 220, 6 S. Ct. 1064, and *Snowden v. Hughes* (1944), 321 U.S. 1, 88 L. Ed. 497, 64 S. Ct. 397. Those cases and their progeny established the principle that laws impartial on their face may be administered unequally so as to constitute illegal discrimination. (*Yick Wo v. Hopkins* (1886), 118 U.S. 356, 374, 30 L. Ed. 220, 228, 6 S. Ct. 1064, 1073.) But not every denial of a right conferred by State law involves a denial of equal protection under the fourteenth amendment. (*Snowden v. Hughes* (1944), 321 U.S. 1, 8, 88 L. Ed. 497, 502, 64 S. Ct. 397, 401.) There is no denial of equal protection where the action is based on a permissible classification. (321 U.S. 1, 8, 88 L. Ed. 497, 503, 64 S. Ct. 397, 401.) The unlawful administration by State officers of a State statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection under the fourteenth amendment unless there is shown to be present in it an element of intentional or purposeful discrimination. (*Snowden v. Hughes* (1944), 321 U.S. 1, 8, 88 L. Ed. 497, 503, 64 S. Ct. 397, 401; *Beverly Bank v. Board of Review* (1983), 117 Ill. App. 3d 656, 664, 453 N.E.2d 96; *Hill v. Daley* (1975), 28 Ill. App. 3d 202, 206, 328 N.E.2d 142.) In order to establish a discriminatory purpose, plaintiffs must show that defendants singled out a particular group for disparate treatment and selected their course of action at least in part for the purpose of causing its adverse effects on an identifiable group. (*Shango v. Jurich* (7th Cir. 1982), 681 F. 2d 1091, 1104; *Azeez v. De-Robertis* (N.D. Ill. 1982), 568 F. Supp. 8, 10; *Beverly Bank v. Board of Review* (1983), 117 Ill. App. 3d 656, 664, 453 N.E.2d 96.) Discriminatory purpose is not presumed, and there must be a showing of clear and intentional discrimination. *Snowden v. Hughes* (1944), 321 U.S. 1, 8, 88 L. Ed. 497, 503, 64 S. Ct. 397, 401.

■ In line with these statements of the law, there is nothing in the record which demonstrates purposeful and intentional discrimination by defendants to deprive plaintiffs of higher compensation and pension benefits. Defendants claim that plaintiffs are paid less than other deputies because pay is based on job classification and not merit certification. Plaintiffs admitted at trial that their primary function was to serve process and execute warrants, and it is evident from the record that the duties of highway patrol officers and investigators obviously entail more traditional police work, requiring more extensive training and more daily personal risk. An action is not a denial of equal protection where the distinction is based on a permissible classification. (*Snowden v. Hughes* (1944), 321 U.S. 1, 8, 88 L. Ed. 497, 503, 64 S. Ct. 397, 401.) Functional differences may justify different

treatment for the investigators and highway patrol officers. (See *Confederation of Police v. City of Chicago* (N.D. Ill. 1980), 481 F. Supp. 566, 568.) We believe under the evidence that the distinction between the salaries of the two groups, based on their different qualifications and duties, is justified.

While a few persons who served process or executed warrants were paid apparently in error under the sheriff's office merit pay schedule, they had all at a prior time been classified as highway patrolmen. Only one now remains with the sheriff's department. These isolated instances of warrant and process servers being paid in the higher classification of a highway patrolman appear to have arisen because of the changeover to the merit system in 1966 and, in another instance, just an apparent error in allowing a former highway patrolman who was transferred to the warrant division to be paid under the sheriff's office merit pay schedule for a two-year period. Not all minor variations in the application of a State's law to different groups violate equal protection under the fourteenth amendment. *Unity Party v. Wallace* (2d Cir. 1983), 707 F. 2d 59, 63.

■ We also believe that the denial of SLEP benefits does not rise to Federal constitutional proportions because, as shown by the record and found by the trial court, there was no clear evidence that this was purposeful and intentional discrimination. Roger Sloot, director of personnel for the county of Lake, testified that once he knew that various deputies had been grandfathered in as merit employees, he contacted IMRF to see if they should be included under SLEP. After receiving a response, Sloot stated he did not enroll those deputies under SLEP on advice of the State's Attorney pending the outcome of the litigation. Plaintiffs and other newly certified personnel were placed under SLEP in May 1982 retroactive to January 1, 1981, prior to the September 1, 1982, judgment ordering them to do so. Testimony indicated that the finance committee of the Lake County Board removed the deputy sheriffs from SLEP years earlier because it was believed that the deputy sheriffs had been mistakenly placed under it in the first place. While this evidence also suggests that it was error not to include full-time deputy sheriffs under SLEP and to remove those who had been included, it does not demonstrate invidious discrimination. An erroneous or mistaken performance of a statutory duty, although a violation of the State statute, is not without more a denial of equal protection of the laws. (*Snowden v. Hughes* (1944), 321 U.S. 1, 8, 88 L. Ed. 497, 502-03, 64 S. Ct. 397, 401; *Ciechon v. City of Chicago* (7th Cir. 1982), 686 F. 2d 511, 522.) Based on all the evidence, the element of intent necessary to show a Federal equal protection vi-

olation is clearly lacking.

 Plaintiffs also appeal from the trial court's denial of their claim for attorney fees, which they sought to recover pursuant to 42 U.S.C. section 1988 (1976). In its memorandum order, the court below stated that its judgment for plaintiffs allowing SLEP benefits was not under the section 1983 count and plaintiffs had failed to show a Federal constitutional violation. Plaintiffs contend here that the trial court erred in not finding a Federal constitutional violation which would entitle them to attorney fees under section 1988. As we decided above, plaintiffs have not shown a Federal violation of equal protection, and consequently there is no basis for awarding attorney fees under section 1988.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT and LINDBERG, JJ., concur.